## GLINN v. UNITED STATES.

### (Circuit Court of Appeals, Seventh Circuit. January 5, 1910.)

### No. 1,571.

1. POST OFFICE (§ 49*)—PROSECUTION FOR USING MAILS TO DEFRAUD—SUFFICIENCY OF EVIDENCE.

A conviction on an indictment for using the mails to defraud, in violation of Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), which charged that defendant falsely represented to the persons intended to be defrauded by letters and circulars sent through the mail that she was conducting a fair, honest, and bona fide matrimonial agency, well knowing that she was not, *held* sustained by evidence showing that she inserted false advertisements in newspapers, purporting to have been inserted by a man or woman of wealth who desired to marry, and in reply to answers received through the mail sent letters and circulars representing that she conducted a matrimonial bureau, and had many clients of wealth of both sexes, and thereby obtained from persons so addressed a fee of $5 each for membership in such bureau and, to be introduced to such clients of wealth, when in fact, so far as shown, none were ever so introduced, and no marriages resulted, and defendant made no attempt to carry out the promises made.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 86; Dec. Dig. § 49.*

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.]

2. CRIMINAL LAW (§ 1170*)—APPEAL—REVIEW—HARMLESS ERROR.

The exclusion of certain original letters offered in evidence by the defendant in a criminal case *held* not prejudicial, where a tabulation of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contents of such letters made by defendant was received in evidence, the correctness of which was not disputed, and which as fully established the only fact for which the letters were competent as would the letters themselves.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3146; 3147; Dec. Dig. § 1170.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

E. L. Glinn was indicted and convicted for a criminal offense, and brings error. Affirmed.

The writ of error is to reverse the judgment of the District Court, sentencing plaintiff in error to a term of one year in the House of Correction of the City of Chicago; and to pay the costs of the prosecution, upon her conviction by a jury of an offense within section 5480, Rev. St. (U. S. Comp. St. 1901, p. 3696).

The indictment charges that plaintiff in error,

"had devised a scheme and artifice to defraud one Harrison Miller, then resident at Clarion, in the State of Iowa, one Abbia N. P. Nix, then resident at St. Louis, in the State of Missouri, one Silas L. Chandler, then resident at Bicknel, in the State of Indiana, and a class of persons then resident within the said United States not capable of being resolved into individuals, and not capable, by reason of their great number, and by reason of a want of information on the part of the said grand jurors, of being named in this indictment, that is to say, such of the persons being desirous of marrying as should make answer to certain advertisements inserted and to be inserted and to be caused to be inserted by her, the said E. L. Glinn, in divers newspapers and public prints throughout the said United States of the kind and character and in substance and to effect following (except that in some instances it would be the advertisement of a woman desiring a husband), to wit:

'Matrimony—Wealthy manufacturer wishes congenial, home-loving wife; no objection to lady employed; object matrimony. Hill, 2208 Wabash Av., Chicago.'

—which said scheme and artifice was a scheme and artifice which the said E. L. Glinn then had devised to defraud the said persons so intended to be defrauded as aforesaid by inserting and causing to be inserted in divers newspapers and public prints in different parts of the said United States fictitious and pretended advertisements of the kind and character above set forth (except that in some instances it would be the advertisement of a woman desiring a husband); by causing the letters, correspondence and communications answering and replying to said advertisements, and inquiring about the same, to be sent and delivered to her, the said E. L. Glinn, at Chicago aforesaid; by replying to said last-mentioned letters, correspondence and communications; by falsely representing and pretending to the said persons so intended to be defrauded respectively, by and through correspondence and circulars (and causing said persons to believe) that she, the said E. L. Glinn, under the name and style of Glinn's International Corresponding Association, was conducting and carrying on at Chicago aforesaid a fair, honest and bona fide matrimonial agency; that she, the said E. L. Glinn, under the said name and style, had numerous wealthy, lady and gentlemen clients who respectively had requested her to find for them loving life companions (husbands or wives as the case might be); that the said Glinn's International Corresponding Association had a great many wealthy members of all ages, descriptions and nationalities enrolled upon its books; that if the said persons so intended to be defrauded respectively would send and pay to her, the said E. L. Glinn, under the said name and style, a membership fee of five dollars, she, the said E. L. Glinn, under the said name and style, would place them respectively in communication with wealthy mem-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

bers of said association (men or women as the case might be), and would continue introducing them respectively to wealthy members of said association (men or women as the case might be), without further charge until she, the said E. L. Glinn, under the said name and style, had found for them respectively suitable husbands or wives (as the case might be); by falsely representing and pretending to said persons so intended to be defrauded respectively that she, the said E. L. Glinn, under the said name and style, had lady and gentlemen clients (as the case might be), who respectively were about to take business trips that would take them near the locality of the said persons so intended to be defrauded respectively and that would make it possible to arrange for a personal meeting at an early date between said clients respectively and the said persons so intended to be defrauded respectively; whereas in truth and in fact (as the said grand jurors charge the facts to be), at the time of the devising of the said scheme and artifice, at the several times of the committing of the several offenses hereafter in this indictment set forth, as the said E. L. Glinn at all of said times well knew, she, the said E. L. Glinn, under the name and style of Glinn's International Corresponding Association, or under any other name, was not conducting and carrying on at Chicago aforesaid or elsewhere a fair, honest and bona fide matrimonial agency; and she, the said E. L. Glinn, under the said name and style, or under any other name and style, did not have numerous wealthy lady and gentlemen clients, who respectively had requested her to find for them loving, life companions (husbands or wives as the case might be); and the said Glinn's International Corresponding Association did not have a great many wealthy members of all ages, descriptions and nationalities enrolled upon its books, and did not have any wealthy members of any kind enrolled upon its books, or desiring to secure husbands or wives (as the case might be); and if the said persons so intended to be defrauded respectively would send and pay the said E. L. Glinn, under said name and style, or under any name or style, a membership fee of five dollars, she, the said E. L. Glinn, under the said name and style, or under any other name, would not place them respectively in communication with wealthy members of said association (men or women as the case might be), and would not continue introducing them respectively to wealthy members of said association (men or women as the case might be) without further charge until she, the said E. L. Glinn, under the said name and style, or under any other name, had found for them respectively suitable husbands or wives (as the case might be), and the said E. L. Glinn, under the said name and style, or under any other name, would not, and intended not to, introduce the said persons so intended to be defrauded respectively to, or place them in communication with any wealthy persons of the opposite sex desiring marriage, and she, the said E. L. Glinn, did not intend to, and would not, find and secure wealthy husbands or wives (as the case might be) for the said persons so intended to be defrauded; and neither the said E. L. Glinn, nor the said association had done anything or accomplished anything at all in furnishing men with wealthy wives or women with wealthy husbands; and no wealthy men desiring to secure wives and no wealthy women desiring to secure husbands had registered their names with such association as members of said association or enrolled themselves as members of said association; and she, the said E. L. Glinn, under the said name and style, did not have lady or gentlemen clients (as the case might be) who respectively were about to take business trips, or any kind of trips, that would take them near the locality of the said persons so intended to oe defrauded respectively, and that would make it possible to arrange for a personal meeting at an early date between the said clients respectively and the said persons so intended to be defrauded respectively, or between any of them; and she, the said E. L. Glinn, under the said name and style, or under any name, would not secure, and intended not to secure, for the said persons so intended to be defrauded respectively, or for any of them, wealthy husbands or wives (as the case might be). And the grand jurors aforesaid, upon their oaths, aforesaid, do further present that the said E. L. Glinn intended, by the means aforesaid, to induce and procure the said persons so intended to be defrauded respectively to send and pay to her, the said E. L. Glinn, under the said name

and style, the sum of five dollars as a fee as aforesaid, and thereby to get possession of the moneys arising from the collection of said fees and thereupon, that is to say upon getting possession of said moneys, to convert said moneys to the own use of her, the said E. L. Glinn, without rendering to said persons therefor such services as she was falsely to represent and pretend as aforesaid that she would render to them, and without rendering to said persons any thing or service of value therefor; and thereby to defraud those said persons of the same moneys; which said scheme and artifice was a scheme and artifice which the said E. L. Glinn, when devising the same and committing the several offenses hereafter in this indictment mentioned, intended to effect, and which said scheme and artifice then and there was a scheme and artifice to be effected, by inciting, by means of the said advertisements, the said persons so intended to be defrauded as aforesaid to open communication with her, the said E. L. Glinn, by means of the Postoffice establishment of the said United States, and by thereupon (that is to say, when the said persons had opened communication with her, the said E. L. Glinn), opening correspondence and communication with those persons respectively under the name and style of Glinn's International Corresponding Association per E. L. Glinn, Manager, by means of the Postoffice establishment of the said United States."

The further facts are stated in the opinion.

W. Knox Haynes, for plaintiff in error.

Edwin W. Sims, U. S. Atty., S. S. Shirer, and Wm. E. Medaris, for the United States.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts as above, delivered the opinion.

The offense, of which the plaintiff in error was convicted, was the sending through the mails of certain letters, set forth in the indictment, in furtherance of a scheme to defraud, to be effected by opening correspondence with persons, residents of the United States, by means of the Postoffice establishment of the United States. The sending of the letters was not denied. The alleged scheme to defraud was the common one known as a matrimonial bureau or agency, the object of which was to bring persons of either sex, desiring to marry, into communication with persons of like desire of the opposite sex.

The initial step taken by plaintiff in error to organize her bureau was a pair of advertisements as follows:

"Matrimony: Wealthy manufacturer wishes congenial, home-loving wife, no objection to lady employed; object matrimony. Hill, 2208 Wabash Ave., Chicago."

"Wealthy young widow, unincumbered, fine appearance, genial and generous, seeks husband and adviser. Glinn, 171 E. 22nd Street, Chicago."

These advertisements were answered by a number of people of both sexes, to each of whom a letter was sent, containing, in the case of each man inquiring, the photograph of a woman (the same photograph in each case), and stating that the lady in question ("the wealthy young widow") had asked plaintiff in error to send to this particular man her full description and the photograph; adding that the lady was desirous of finding at once a good moral upright husband, who would help her in her business cares; that she was contemplating a business trip that would take her "near your locality," in which event it would be possible to arrange for a personal meeting at an early date; and

asking the person addressed to fill out a description blank enclosed and return same with a membership fee of $5.00, which would entitle him to the privilege of the association without extra charge. To each woman inquiring, a like letter was sent, enclosing, also, a photograph (the photograph of a man—the same to each); adding that the "wealthy manufacturer" had asked that this be done, and stating that such wealthy manufacturer was contemplating a business trip in her locality in a short time.

With these letters were sent to the men an additional list of so-called lady members, and to the women an additional list of so-called gentlemen members, a sample of which is the following:

"906—Young lady, age 24, complexion medium, height 5 ft., 4 in., weight 115 lbs., widow. Protestant, American, occupation at home. Worth $10,000, inheritance $15,000."

"703—Lady, age 34, complexion medium, height 5 ft. 5¼ in., weight 185 lbs., widow, Catholic Canadian. Worth $10,000."

—and corresponding descriptions of men.

In this way, during the time the bureau was in progress, and before the trial, about three hundred men and three hundred women had each been brought to join the bureau and pay in their initiation fee. As far as the evidence discloses, however, none of the interchanges of communications brought about, resulted in marriage.

The scheme, thus carried out, cannot be said to be in any sense, whether we look at it from the view point of some European countries, where matrimonial bureaus are encouraged, or from the view point of our own country, where they are considered as against public policy, to be a bona fide matrimonial bureau. The object of the bureau was not honestly to bring young men and women into communication with each other, that they might have an opportunity of determining whether they suited one another for the purposes of marriage. The sole object was to get the five dollar membership fee; to accomplish which the scheme pictured to the mind of the person addressed that the person of the other sex presented would be a desirable mate; had an attractive personality (for the photograph used was an attractive one); and was in comfortable circumstances—a mental picture that had no basis in the facts.

Error is assigned that there was no proof submitted to the jury sustaining the indictment, and that plaintiff in error's motion, to instruct the jury to find a verdict of not guilty, ought therefore to have been sustained. The indictment avers that plaintiff in error falsely represented to the persons intended to be defrauded that she was "conducting and carrying on, at Chicago aforesaid, a fair, honest and bona fide matrimonial agency," well knowing that she "was not conducting and carrying on, at Chicago aforesaid, or elsewhere, a fair, honest and bona fide matrimonial agency." There was no demurrer to the indictment as a whole; nor to this part of it, as insufficient or indefinite; and no motion for a bill of particulars; plaintiff in error going to trial upon this averment and its traverse, as if this were a sufficient particularization of the scheme to defraud alleged. Whether, under these circumstances, a conviction based upon a scheme so generally pre-

sented would stand, we need not decide, for, accepting the issue of the indictment as framed by plaintiff in error, viz; that the only alleged false representations traversed were those relating to the "wealth" of the persons presented, the issue thus submitted was whether plaintiff in error intended, or did not intend, to introduce to persons addressed the "wealthy" persons of the other sex—an issue of fact submitted to the jury, not alone upon the circumstance that a few persons of wealth had gotten upon the books of plaintiff in error, but upon all the other circumstances of the case, including this one, for instance, that a man who testified that he paid his money to be brought into communication with the "wealthy widow," was actually put into communication with one earning her living by domestic service—circumstances amply justifying the verdict of a jury that it was not the intention of plaintiff in error to introduce the persons responding to other persons of wealth. And the verdict of the jury being thus amply supported, must be accepted as a verdict that the averments of the indictment in this respect were proven according to the rules of law.

Error is assigned that certain original letters, written by so-called members to plaintiff in error, were offered and rejected. This is true, but it is also true that plaintiff in error was permitted to put in evidence all the books and records in the case, including (for the records were made up, among other things, from these letters) the contents of the letters rejected; and there is nothing in the record that shows that there was any issue presented to the jury, or any contention made, that the records were not a true tabulation of the letters; from which it follows that plaintiff in error was permitted to put fully before the jury the only fact—the character of her business—for which the letters might have been competent; and as to these evidentiary facts there was no dispute. We do not think that, under these circumstances, the rejection of the letters was prejudicial error.

Other errors are assigned, such as remarks made by the Court during the trial and in the instructions to the jury, but none of them present any substantial error.

The judgment of the District Court is

Affirmed.